

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00167-CR

CHRISTIAN HONEYCUTT, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 198th District Court
Kerr County, Texas
Trial Court No. B22430

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

# MEMORANDUM OPINION

On March 1, 2023, a Kerr County jury[1] convicted Christian Honeycutt of aggravated assault with a deadly weapon. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (Supp.). After Honeycutt pled true to the State's punishment-enhancement allegation, the jury assessed a sentence of twenty-five years' imprisonment. On appeal, Honeycutt raises two bases for reversal: (1) that the trial court erred by refusing to instruct the jury on the lesser-included offense of deadly conduct and (2) that his trial counsel was ineffective for failing to investigate his relationship with the victim. Because we find both points are without merit, we affirm the trial court's judgment.

## I. Honeycutt Was Not Entitled to a Lesser-Included-Offense Instruction

The State alleged that Honeycutt intentionally or knowingly threatened Michael Dean Sheppard with a knife. Honeycutt argues that he was entitled to an instruction on the lesser-included offense of deadly conduct because the evidence showed that he was merely "reckless" in his conduct towards Sheppard. We find Honeycutt was not entitled to this instruction.

### A. Factual Background

Honeycutt did not testify in his defense, but Sheppard testified that, on May 13, 2022, he was in the bathroom at a Stripes convenience store attempting to use the restroom when Honeycutt attacked him. Sheppard testified that he entered the bathroom and that there were "a pair of legs walking back and forth in the stall." According to Sheppard, Honeycutt "opened the

---

[1]Originally appealed to the Fourth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We are unaware of any conflict between precedent of the Fourth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

stall door and . . . had a knife in his hand." Sheppard said that the knife was "open" and was "pointed" at him. Sheppard testified that he said, "Oh," and backed up, exiting the bathroom. Sheppard testified that he notified the store clerk of a man in the bathroom with a knife. Honeycutt then opened the door to the bathroom with the knife, and Sheppard detained Honeycutt until the police arrived and arrested him.

On cross-examination, Honeycutt attempted to establish that he simply held a knife and may or may not have been threatening Sheppard with the knife. Sheppard, however, reiterated that Honeycutt was pointing the knife at him and threatening him. For example, on cross-examination, the exchange between Honeycutt's counsel and Sheppard was as follows:

> Q    [Y]ou never previously indicated that he pointed a knife at you at that first instance.
>
> A    I specifically said that he pulled a knife out on me. That's indicating that he pointed it at me.
>
>  . . . .
>
> Q    . . . So it's your testimony here today that you -- during your interviews with Officer Virdell, you did allege that he pointed a knife at you when you first went into that rest room. Is that what your testimony is today?
>
> A    Yes. He had a knife out on me.

Sheppard also was insistent that, although Honeycutt made no verbal threats against him, Honeycutt's conduct was still threatening and not merely reckless. During cross-examination, the exchange between Sheppard and Honeycutt's counsel was as follows:

> Q    . . . One last question. At any time during your investigation did you determine if Mr. Honeycutt had made a verbal threat to anyone?

3

A        I don't recall exactly.  I don't know that there is an actual verbal threat, sir.

. . . .

Q        . . . Then there you say that as soon as you saw that knife -- since you're a combat vet, as soon as you saw that knife and he is walking towards you without any verbal threats, you just snapped and you choked him out, right?

A        Correct, because he was a threat, dangerous to myself and other people and himself at that time.

Q        Despite him making no verbal threats and just walking towards you?

A        You don't need to make a verbal threat.

**B.        Standard of Review**

The determination of whether to submit a lesser-included-offense issue to the jury is subject to a two-part test.  *See Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993); *see also Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim. App. [Panel Op.] 1981).  Under the first prong, "the lesser-included offense must be [contained] within the proof necessary to establish the offense charged."  *Rousseau*, 855 S.W.2d at 672.  Under the second prong, there must be some evidence in the record that would permit a jury to rationally find "that if the [accused] is guilty, he is guilty only of the lesser[-included] offense."  *Id.*

For the first prong, there is no dispute, and the State concedes, that "deadly conduct" is a lesser-included offense of aggravated assault when it is alleged that the defendant used a deadly weapon.  *See Bell v. State*, 693 S.W.2d 434, 438–39 (Tex. Crim. App. 1985); *Guzman v. State*, 188 S.W.3d 185, 191 n.11 (Tex. Crim. App. 2006).

Because the first prong is met, the Court will focus on the second prong of the analysis, "whether the evidence admitted at trial 'would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense.'" *George v. State*, 634 S.W.3d 929, 937 (Tex. Crim. App. 2021) (quoting *Solomon v. State*, 49 S.W.3d 356, 369 (Tex. Crim. App. 2001)). The question presented in this second step of the analysis is whether there is some evidence that Honeycutt, if guilty, is guilty of only the lesser-included offense of deadly conduct.

There are two ways to demonstrate that Honeycutt could be guilty of only the lesser-included offense and not the offense of aggravated assault: (1) evidence was "raised that refutes or negates other evidence establishing the greater offense" of aggravated assault and (2) "the evidence presented regarding [Honeycutt's] awareness of the risk may be subject to . . . different interpretations." *Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012). In both such instances, the jury should be instructed as to the lesser-included offense of "deadly conduct." *See id.* The evidence produced, however, must be sufficient to establish "a valid, rational alternative to the charged offense" of aggravated assault. *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007) (quoting *Forest v. State*, 989 S.W.2d 365, 367 (Tex. Crim. App. 1999)).

"A person commits an offense [of deadly conduct] if he recklessly engages in conduct that places another in imminent danger of serious bodily injury." TEX. PENAL CODE ANN. § 22.05(a). For a deadly conduct instruction, there must be some evidence germane to recklessness and not just intentional conduct. *See, e.g.*, *Cavazos*, 382 S.W.3d at 385 (recognizing that "pulling out a loaded gun in a room full of people" and "shooting directly at a

person" is not just "reckless" even when the defendant later told someone he did not intend to shoot anyone).

### C. Analysis

We find that Honeycutt supplied no evidence germane to recklessness or demonstrating that his conduct merited the lesser-included deadly conduct instruction. Analogous to these facts is *Guzman v. State*, 188 S.W.3d 185 (Tex. Crim. App. 2006). The defendant in *Guzman* raised a similar issue to that raised in this case, whether the lesser-included offense of deadly conduct should have been provided as an instruction when the defendant was charged with attempted murder.

In *Guzman,* the defendant "put a loaded semi-automatic gun to his ex-girlfriend's head and pulled the trigger." *Id.* at 186. The Texas Court of Criminal Appeals held that, although Guzman's conduct could be characterized as both reckless and intentional, he was not entitled to an instruction on a "reckless state of mind" or "deadly conduct." *Id.* at 193. The court held the following:

> While the statute setting out the elements of aggravated assault does not include a special subsection describing the presumption that recklessness may be inferred from the act of pointing a gun at a person's head, it would defy logic—and the canons of statutory construction—to assume that the legislature intended such a statutory presumption to apply to the lesser, but not the greater, offense when both require exactly the same "reckless" mental state.

*Id.*

Based on *Guzman*, simply because Honeycutt's behavior could be characterized as both reckless and intentional does not mandate that a deadly conduct instruction be given. Indeed, after considering Sheppard's testimony that Honeycutt opened his stall door and came towards

6

him with a knife, we find no evidence to support Honeycutt's claim that his conduct was merely reckless such that he was entitled to a "deadly conduct" instruction. Accordingly, the trial court was not required to instruct the jury on the lesser-included deadly conduct charge, and we find no basis for reversal on this issue.

## II.     Honeycutt Cannot Show Ineffective Assistance of Counsel

As a second basis for relief, Honeycutt claims that his trial counsel was ineffective for failing to investigate the relationship between Honeycutt and Sheppard.[2] Honeycutt claims that, had that relationship been fully investigated, it would have changed the outcome of his case because Sheppard was associated with known drug dealers.

Pursuant to the Sixth Amendment, an accused is guaranteed the right to effective assistance of counsel. U.S. CONST. amend. VI. The standard for assessing an ineffective assistance of counsel claim is *Strickland v. Washington*, 466 U.S. 668 (1984), and the same standard applies to ineffective assistance of counsel claims in Texas. *See Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). Under *Strickland*, to prove his counsel was ineffective, Honeycutt must make two showings: (1) that his trial counsel's performance was deficient and (2) that he was prejudiced as a result of his counsel's performance. *See McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996) (per curiam), *overruled on other grounds by Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998). To show deficient performance, he must prove his counsel's actions fell "below the professional norm for reasonableness." *Id.* To

---

[2]The reporter's record shows that Honeycutt had five different attorneys at the trial court level.

7

show prejudice, he must show that "there is a reasonable probability that, but for counsel's errors," the result of the trial would have been different. *Id.*

Honeycutt specifically claims that his counsel was ineffective because he failed to investigate the relationship between Sheppard and Honeycutt. In his motion for new trial, Honeycutt notified the trial court that, after his conviction, an anonymous person provided a tip to Crime Stoppers regarding Honeycutt's encounter with Sheppard at Stripes. According to this anonymous person, Honeycutt was "homeless at the time," and Honeycutt went "over to a residence at which he had previously stayed." "At the residence [Honeycutt] busted out several windows over a dispute and then fled on foot." Two of the residents then chased Honeycutt to the Stripes bathroom. The anonymous person then stated that Sheppard, who was associated with drug dealers, was contacted to handle the situation with Honeycutt and to restrain him. Sheppard was chosen because "he is a veteran," which "makes his testimony seemingly irrefutable." Sheppard then incapacitated Honeycutt until the police arrived.

As recognized above, there are two prongs to *Strickland*: (1) deficiency and (2) prejudice. In the present action, we cannot find that the first prong has been met. To assess the reasonableness of an attorney's investigation into a case, "a [reviewing] court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527 (2003). In the present action, Sheppard testified at trial that he had never seen Honeycutt before. The exchange between Sheppard and Honeycutt's attorney was as follows:

> Q . . . Had you ever seen [Honeycutt] before in your entire life, as far as you know?

8

A       Nope.

The facts and information Honeycutt presented failed to contradict Sheppard's testimony that there was no relationship, and no evidence was presented that gave notice to Honeycutt's counsel of a potential relationship. Honeycutt himself may have informed counsel that there was no relationship, and his counsel may have relied upon that representation. There is simply nothing to dispute Sheppard's testimony that there was no relationship between the two men.

Also, Honeycutt failed to demonstrate that his attorneys delayed in acting on information available to them. Honeycutt did not establish that he disclosed any relationship or put his trial counsel on any notice that he may have had a relationship with Sheppard. Indeed, under the *Wiggins* standard, this information was not "known" to Honeycutt's counsel at the time of his conviction. The Crime Stoppers anonymous tip was reported on March 22, 2023. That was after Honeycutt's conviction on March 1, 2023. Notably, to advocate for Honeycutt and in response to that tip, his counsel filed a motion for new trial on May 19, 2023, and his counsel attempted to gain a new trial based upon that information. Considering these facts, we cannot find that Honeycutt's trial counsel was deficient. As a result, we overrule this ineffective assistance of counsel claim.

## III.  Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:     December 8, 2023
Date Decided:       January 12, 2024

Do Not Publish